IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

CHARLES DEMPSY STRICKLAND,

     Plaintiff,

v.                          CASE NO. 2:10-cv-00765

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.


**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Charles Dempsy Strickland (hereinafter referred to as "Claimant"), filed an application for DIB on March 1, 2007, alleging disability as of November 11, 1992, due to bone spurs on spine, pain and depression.[1]  (Tr. at 11, 74-79, 96-103, 114-19,

---

[1]  Claimant previously filed Title II applications for a period of disability and DIB on July 13, 1990 and March 8, 1991. These applications were denied and not appealed.  On March 1, 2007, Claimant protectively filed a Title XVI application for

123-27.)  The claim was denied initially and upon reconsideration.
(Tr. at 11, 38-42, 46-48.)  On July 31, 2007, Claimant requested a
hearing before an Administrative Law Judge ("ALJ").  (Tr. at 49.)
The hearing was held on November 15, 2007, before the Honorable
Harry C. Taylor, II.  (Tr. at 17-35, 55.)  By decision dated
January 18, 2008, the ALJ determined that Claimant was not entitled
to benefits.  (Tr. at 11-16.)  The ALJ's decision became the final
decision of the Commissioner on March 26, 2010, when the Appeals
Council denied Claimant's request for review.  (Tr. at 1-4.)  On
May 23, 2010, Claimant brought the present action seeking judicial
review of the administrative decision pursuant to 42 U.S.C. §
405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the
burden of proving a disability.  See Blalock v. Richardson, 483
F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the
"inability to engage in any substantial gainful activity by reason
of any medically determinable impairment which can be expected to
last for a continuous period of not less than 12 months . . . ."
42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential
evaluation" for the adjudication of disability claims.  20 C.F.R.

---

supplemental security income ["SSI"] payments.  This claim was
denied because Claimant possessed income in excess of that
allowed for SSI payments.  Claimant did not appeal this decision.
(Tr. at 11.)

§ 404.1520 (2002).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2002).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this

3

specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date of November 11, 1992, through his date last insured of June 30, 1996. (Tr. at 13.) Under the second inquiry, the ALJ found that Claimant had the following medically determinable impairments: osteoarthritis, spurs in the thoracic spine/bone spurs, lumbar sprain, lesion on the groin, gastrointestinal problems, pneumonia, and bronchitis; but that all the aforementioned diagnoses were in 1989 and 1990 and prior to the alleged onset date. (Tr. at 13.) The ALJ then determined that through the date last insured, the sparse objective medical evidence did not establish an impairment or combination of impairments that significantly limited Claimant's ability to perform basic work-related activities for 12 consecutive months; therefore, he did not have a severe impairment or combination of impairments. (Tr. at 13-16.) On this basis, benefits were denied. (Tr. at 16.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as

4

> "evidence which a reasoning mind would accept
> as sufficient to support a particular
> conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less
> than a preponderance. If there is evidence to
> justify a refusal to direct a verdict were the
> case before a jury, then there is 'substantial
> evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting

Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Additionally, the Commissioner, not the court, is charged with

resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d

1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not

abdicate their traditional functions; they cannot escape their duty

to scrutinize the record as a whole to determine whether the

conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d

396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the

Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was 52 years old at the time of the administrative

hearing.  (Tr. at 21.)  He has a General Equivalency Diploma

["GED"], two years of college education, and a certification in

welding. (Tr. at 23-24.)  In the past, he worked for approximately

15 years as a welder for Ford Motor Company.  (Tr. at 24.)  He

stopped working in 1989 due to an on the job back sprain in 1989.

(Tr. at 20.)  In 1992, he was granted full long term disability

through Ford Motor Company.  Id.  He was 41 years old at the time

his insured status expired on June 30, 1996.  (Tr. at 74, 80.)

The Medical Record Prior to Date Last Insured

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it below.

On May 3, 1990, a form titled "Group Disability Insurance" states:  "Describe nature of injury or sickness: Pneumonia, off work: 2/27/89-3/13/89; Biopsy Lesion Groin, off work:  4/24/89-5/10/89; Bronchitis, off work: 9/28/89-10/10/89; Gastroentinitus, off work: 9/11/89-9/25/90; Paraspinal lumbar sprain - off work: 8/17/89-8/18/89."  (Tr. at 138.)  The doctor's signature on the form is illegible.  Id.

On May 23, 1990, a form titled "Group Disability Insurance" states:  "Describe nature of injury or sickness: Bone spurs."  (Tr. at 139.)  The form is signed by Norman J. Rotter, M.D.  Id.

On May 24, 1990, a form titled "Report of Disability Ford Life Insurance Company" states that Claimant was treated on September 13, 1989 and September 20, 1989 for back strain muscle spasms, that a "March/April 1990" MRI CT scan myelogram shows "Bone Spur T9 T10" as provided by Norman Rotter, and that a "second opinion per Dr. Rotter" was obtained from James Ausman.  (Tr. at 140.)

On July 24, 1990, a physical therapy prescription form states that Claimant's diagnosis is "osteoarthritis, spurs in thoracic spine."  (Tr. at 141.) The treatment program prescribed: "moist heat, extension and strengthening of back, back education,

stationary bicycle, training." Id.   The signature on the form
from Wyandotte Medical Center is illegible.   Id.

Medical Records After Date Last Insured

     Records indicate Claimant received treatment at Oakwood
Hospital and Medical Center on February 26, 2000, March 24, 2000,
and October 11, 2011.  (Tr. at 163-71.)  Although the handwritten
notes are largely illegible, the words "low back pain" and
"bronchitis" are decipherable.  (Tr. at 164, 171.)

     On March 4, 2000, Claimant had a chest x-ray interpreted by
Eric Groskind, M.D., Oakwood Hospital and Medical Center.  (Tr. at
168.)  Dr. Groskind found:

     FULL RESULT: Upright PA and lateral views were obtained
     without prior studies for comparison.  There is bilateral
     hyperinflation and a large bullae is noted at the left
     lung apex measuring approximately 7.5 x 4.5 cm.  There is
     no evidence of acute infiltrate, vascular congestion, or
     pleural effusion.  The heart and mediastinal structures
     are within normal limits.

     IMPRESSION:  There is bullous emphysematous change with
     a large bullae noted at the left lung apex as described
     above.

Id.

     On December 8, 2006, Claimant had an MRI of the lumbar spine
without contrast performed at Charleston Area Medical Center
["CAMC"] by Russell F. King, II, M.D., radiologist.  (Tr. at 161-
62.)  Dr. King's findings:

     HISTORY:  Patient with low back pain that radiates into
     legs.  Bilateral feet numbness.  Bilateral hand numbness
     at night.

7

FINDINGS: Axial and sagittal sequences of the lumbar spine were obtained without contrast. Lumbar vertebrae are in normal alignment. There is no fracture or subluxation. Marrow signal is normal on all sequences. There are mild degenerative changes at the T11-T12 level with a small Schmorl's node inferior endplate of T11. Mild degenerative endplate changes are present at the L1-L2 level. There is mild L4-L5 disc bulge without evidence of canal stenosis or neural foraminal compromise. There is also mild disc bulge at the L5-S1 level with a small posterior annular fissure. There is no canal stenosis or neural foraminal compromise. The conus medullaris terminates at the L1 level and is normal in signal intensity. Cauda equina nerve roots are unremarkable. Incidental note is made of several small left renal cysts.

IMPRESSION:
1. Mild L4-L5 and L5-S1 disc bulges. No evidence of focal disc herniation, spinal canal stenosis, or neural foraminal compromise.
2. Minimal posterior disc space narrowing L5-S1 with a small annular fissure.
3. Degenerative changes with mild disc space narrowing at T11-T12.
4. Small left renal cysts.

Id.

On January 16, 2007, John Schmidt, III, M.D., a neurologist, examined Claimant and provided a consultation report to Thomas Goodwin, D.C. (Tr. at 142-44, 156-57, 158-60.) He stated that Claimant "has had low back pain since he was injured at work in 1989 and he has been essentially disabled from the work force since 1992 as a result of this. He rates his present pain as a 10/10 in severity." (Tr. at 157.) Dr. Schmidt found:

NEUROLOGIC EXAMINATION:
Shows the patient well developed, alert and oriented x3 and in no acute distress. The patient is comfortable. Gait and station is normal with good tandem and Romberg is negative. Lymphatic nodes are negative...

8

Inspection/palpation of the pulses of the peripheral vascular shows normal pulses present no edema or tenderness noted...

Inspection and palpation of the head and neck shows trachea midline with no misalignment swelling or tenderness noted.  Range of motion of the neck is normal in flexion extension and lateral bending.  Stability of the neck is still and upright.  Muscle strength/tone of the neck shows no atrophy spasticity rigidity or flaccidity.  Skin and subcutaneous is normal upon a limited examination of the head...(and) neck...

Inspection/palpation of the spine shows no misalignment swelling but there is a tenderness noted in the DL spine diffusely.  Range of motion of the spine shows normal flexion and extension.  Stability of the spine is normal. Muscle strength/tone of the spine shows no atrophy spasticity rigidity or flaccidity.  Skin and subcutaneous of the spine is normal on a limited examination.

Inspection/palpation of the RLE ["Right Lower Extremity"] shows no misalignment swelling atrophy erythema or tenderness noted.  Range of motion of the RLE has normal flexion and extension.  Stability of the RLE shows no subluxation or laxity.  Muscle strength/tone of the RLE shows no atrophy spasticity rigidity or flaccidity...

Inspection/palpation of the LLE ["Left Lower Extremity"] shows no misalignment swelling atrophy erythema or tenderness noted.  Range of motion of the LLE has normal flexion and extension.  Stability of the LLE shows no subluxation or laxity.  Muscle strength/tone of the LLE is normal...Skin and subcutaneous of the LLE is normal on a limited examination.

Straight leg raising is without limitation.

Coordination shows normal finger to nose.  Deep tendon reflexes are 2+ in all extremities.  Pathologic Reflexes shows there are no pathologic reflexes.  Sensation is intact and symmetric in the bilateral upper and lower extremities to pinprick and light touch.

Test/Record Reviewed: MRI-Lumbar, 12/08/2006, CAMC. RADIOGRAPHIC STUDIES: MRI scan recently accomplished is reviewed and demonstrates a degree of degenerative spondylitic arthropathy consistent with his age.  There

is no evidence of destructive, neoplastic or infectious disease changes seen. There is no evidence of instability.

IMPRESSION: Degenerative spondylitic arthropathy.

RECOMMENDATION: I had an extended discussion with this patient and his wife regarding the natural history of degenerative spondylitic arthropathy and the superimposed clinical picture of chronic musculoskeletal mechanical back strain. He does not have surgically remediable spine pathology in my opinion. Given his age, education, previous work history and his chronic pain syndrome, he represents permanent total disability from the workforce. I did recommend that he have functional capacity evaluation accomplished through physical therapy to further document his capacity and to help with his disability issues. I otherwise will cease to follow him unless his clinical situation changes.

(Tr. at 142-44, 158-60.)

On April 16, 2007, Henry Ford Hospital and Health System returned a form to West Virginia Disability Determination stating that it had no medical evidence of record regarding the Claimant for the dates 1992 to 1996. (Tr. at 145.)

On April 23, 2007, Henry Ford Hospital and Health System returned a form to West Virginia Disability Determination Service stating that it had no medical evidence of record regarding the Claimant's treatment by "Dr. Rotter 1/1/92-12/31/94." (Tr. at 146.)

On June 26, 2007, a State agency medical source did not complete a Physical Residual Functional Capacity Assessment. (Tr. at 147-54.) The evaluator, A. Rafael Gomez, M.D. stated: "Last decision was based on no evidence. No new evidence for DLI [date

last insured] was submitted.  Insufficient evidence prior to DLI of 06/30/96 to assess this case." (Tr. at 154.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to recognize the severity of his impairments by not giving adequate weight to the opinions of treating and examining physicians regarding his condition as of his date last insured, June 30, 1996; and (2) the ALJ failed to re-contact the claimant's treating physician as required by 20 C.F.R. § 404.1512(e). (Pl.'s Br. at 2-5.)

The Commissioner asserts that substantial evidence supports the ALJ's finding that Claimant established no "severe" impairments between November 11, 1992 and June 30, 1996 at Step Two, and thus, was not disabled under the Act. (Def.'s Br. at 10-18.)

Weighing Medical Opinions & No "Severe" Impairments at Step Two

Claimant argues the ALJ erred in failing to recognize the severity of his impairments by not giving adequate weight to the opinions of treating and examining physicians regarding his condition as of his date last insured, June 30, 1996. (Tr. at 2.) Specifically, Claimant asserts:

> The claimant's treating physician, Dr. Rotter, completed a Ford Life Insurance Company form in which he opined that the claimant had been disabled since December 27, 1989 (Transcript pgs. 138-139).  He described the injury as "bone spurs" (Transcript pg. 139).  He also noted the claimant's overall poor health in stating the claimant

11

had been off work with pneumonia from February 27, 1989 through March 13, 1989, biopsy lesion groin April 24, 1989 through May 10, 1989, Bronchitis September 28, 1989 through October 10, 1989, Gastroenteritis September 11, 1989 through September 25, 1990, Paraspinal lumbar sprain August 17, 1989 through August 18, 1989 (Transcript pg. 138).  The ALJ did not address what limitations would be found if a person was off of work for a similar amount of time in one year.

An examining physician, John Schmitt, III, opined that "given his age, education, previous work history and his chronic pain syndrome, he represents permanent total disability from the work force" (Transcript pg. 144).

Social Security Ruling 03-2p addresses chronic pain...Mr. Strickland has suffered chronic pain since the late 1980's (Transcript pg. 139).  He was treated for back strain and muscle spasms in 1989 by Dr. Reuben Lopatin, followed by Dr. Rotter starting in March/April of 1990 (Transcript pg. 140).

(Pl.'s Br. at 3-4.)

The Commissioner responds that substantial evidence supports that Claimant established no "severe" impairments at Step Two and, thus, was not disabled under the Act.  (Tr. at 10-18.) Specifically, the Commissioner asserts:

Citing to the sequential evaluation process at 20 C.F.R. § 404.1520(c), the ALJ found that Plaintiff's insurance form reports of 1990, listed diagnoses of osteoarthritis, bone spurs, lumbar sprain, groin lesion, gastrointestinal problems, pneumonia, and bronchitis (Tr. 13, Finding No. 3)...However, in accordance with the regulations and well-established Fourth Circuit holdings, the ALJ found that Plaintiff's mere list of diagnoses could not establish the existence of "severe" impairments at step two (Tr. 13, Finding No. 4).  20 C.F.R. §§ 404.1520(a)(4)(ii), .1521.  Absent a showing of severity at step two, the sequential evaluation process ended. Id. (providing that if the Commissioner at any point in the sequence finds that the claimant has not met his burden, review does not proceed to the next step).

12

> Put in other words, contrary to Plaintiff's assertions that the ALJ failed to assess Plaintiff's functional limitations from 1992 through 1996, without evidence of any functional limitations reasonably resulting from the listed diagnoses, the ALJ could not assess Plaintiff's functional limitations throughout the remaining steps. Because substantial evidence supported the ALJ's decision through step two, this Court must affirm...this is a straight-forward case of non-disability due to lack of evidence.

(Def.'s Br. at 10-11.)

Under current law, a severe impairment is one "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2010); see also 20 C.F.R. § 404.1521(a) (2010); Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (recognizing change in severity standard). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b) (2010). Examples of basic work activities are:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

SSR 96-3p provides that

> In determining the severity of an impairment(s) at

13

step 2 of the sequential evaluation process set out in 20
CFR 404.1520 and 416.920, evidence about the functionally
limiting effects of an individual's impairment(s) must be
evaluated in order to assess the effect of the
impairment(s) on the individual's ability to do basic
work activities.   The vocational factors of age,
education, and work experience are not considered at this
step of the process.   A determination that an
individual's impairment(s) is not severe requires a
careful evaluation of the medical findings that describe
the impairment(s) (i.e., the objective medical evidence
and any impairment-related symptoms), and an informed
judgment about the limitations and restrictions the
impairment(s) and related symptom(s) impose on the
individual's physical and mental ability to do basic work
activities.    (See SSR 96-7p, "Titles II and XVI:
Evaluation of Symptoms in Disability Claims: Assessing
the Credibility of an Individual's Statements.")

Because a determination whether an impairment(s) is
severe requires an assessment of the functionally
limiting effects of an impairment(s), symptom-related
limitations and restrictions must be considered at this
step of the sequential evaluation process, provided that
the individual has a medically determinable impairment(s)
that could reasonably be expected to produce the
symptoms. If the adjudicator finds that such symptoms
cause a limitation or restriction having more than a
minimal effect on an individual's ability to do basic
work activities, the adjudicator must find that the
impairment(s) is severe and proceed to the next step in
the process even if the objective medical evidence would
not in itself establish that the impairment(s) is severe.
In addition, if, after completing development and
considering all of the evidence, the adjudicator is
unable to determine clearly the effect of an
impairment(s) on the individual's ability to do basic
work activities, the adjudicator must continue to follow
the sequential evaluation process until a determination
or decision about disability can be reached.

SSR 96-3p, 1996 WL 362204, *34469-70 (1996).

The purpose of SSR 96-4p is

to clarify longstanding policy of the SSA on the
evaluation of symptoms in the adjudication of claims for
disability benefits...In particular, this Ruling

14

emphasizes that:

1. A "symptom" is not a "medically determinable physical or mental impairment" and no symptom by itself can establish the existence of such an impairment.

2.   In the absence of a showing that there is a "medically determinable physical or mental impairment," an individual must be found not disabled at step 2 of the sequential evaluation process.  No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment.

3.   The terms "exertional" and "nonexertional" in the regulations describe types of functional limitations or restrictions resulting from a medically determinable physical or mental impairment; i.e., exertional limitations affect an individual's ability to meet the strength demands of jobs, and nonexertional limitations or restrictions affect an individual's ability to meet the nonstrength demands of jobs.  Therefore, a symptom in itself is neither exertional nor nonexertional.  Rather, it is the nature of the functional limitations or restrictions caused by an impairment-related symptoms that determines whether the impact of the symptom is exertion, nonexertional, or both.

4.   The application of the medical-vocational rules in appendix 2 of subpart P of Regulations No. 4 depends on the nature of the limitations and restrictions imposed by an individual's medically determinable physical or mental impairment(s), and any related symptoms.

SSR 96-4p, 1996 WL 374187 (1996).

The ALJ found that at step one, that Claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 11, 1992, through his date last insured of June 30, 1996 (20 CFR 1520(b) and 404.1571 *et seq.*).  (Tr. at 13.)

At the next step, the ALJ found:

15

Through the date last insured, the claimant had the following medically determinable impairments: osteoarthritis, spurs in the thoracic spine/bone spurs, lumbar sprain, lesion on the groin, gastrointestinal problems, pneumonia, and bronchitis (20 CFR 404.1520(c)). The aforementioned diagnoses were in 1989 and 1990 and prior to the alleged onset date.

Through the date last insured, the sparse objective medical evidence does not establish any impairment or combination of impairments that significantly limited the claimant's ability to perform basic work-related activities for 12 consecutive months; therefore, the claim did not have a severe impairment or combination of impairments (20 CFR 404.1521).

(Tr. at 13.)

The ALJ then detailed the medical evidence of record and Claimant's testimony:

The claimant alleges disability beginning November 11, 1992, due to bone spurs in his spine, a bulging disc at the L4-5 level, and degenerative changes (narrowing) at the T11-12 level. In an opening statement, the claimant's representative noted the aforementioned conditions and reported the claimant's resultant symptoms as extreme back pain and numbness in the legs and hands.

During the time at issue, the claimant testified that he had been diagnosed with spurs in his thoracic spine, which push against his spinal cord, with resultant constant pain in the center of his back and muscle spasms. He attempted physical therapy with no improvement of symptoms. During the time at issue, the claimant reported an inability to crouch; however, he could bend at the waist and stoop "a little" and kneel. The claimant testified that his back condition has remained unchanged since he stopped work. He testified that he continues to have episodes where he cannot walk. He reportedly has these episodes once or twice a month, and he stays in bed during these episodes. He has never used a walker to ambulate - he uses a chair. A physician had reportedly told him the spurs in his back will never get smaller; however, they could grow. If this happens, he was reportedly told he will be in a wheelchair and that surgery will be necessitated. The claimant

16

testified that he has received disability insurance payments from his prior employer for at least 15 years. He had reportedly been evaluated by a spine specialist and had undergone numerous testing (MRI, CT scan, and myelogram).

As previously noted, through the date last insured, the claimant had the following medically determinable impairments: osteoarthritis, spurs in the thoracic spine/bone spurs, lumbar sprain, lesion on the groin, gastrointestinal problems, pneumonia, and bronchitis (20 CFR 404.1520(c)).  The aforementioned diagnoses were in 1989 and 1990 and prior to the alleged onset date, and the diagnoses are not supported by objective findings.

A Group Disability Insurance form completed by a physician (name not eligible (sic, legible)) no (sic, on) May 3, 1990, reflects the claimant had been off work for short periods in 1989 for the following injuries/sickness: lumbar sprain, lesion on groin, pneumonia, and bronchitis.  The claimant had also been off work in 1989 and 1990 for gastrointestinal problems. Objective findings were not shown by the physician, and the aforementioned diagnoses were prior to the claimant's alleged onset dated.   Further, the aforementioned conditions are not alleged by the claimant with the exception of back problems (Exhibit 1F).

The objective medical evidence includes a physical therapy record from Wyandotte Hospital and Medical Center dated July 24, 1990.  This record reflects a diagnosis of osteoarthritis and spurs in the thoracic spine.  Again, objective findings are not evidenced (Exhibit 4F).

On May 23, 1990, Norman J. Rotter, M.D., the claimant's then treating physician, completed a Group Disability Insurance form, in which he opined the claimant had been totally and continuously disabled since December 27, 1989, due to bone spurs. Dr. Rotter based his opinion on short-term treatment from December 27, 1989 to April 17, 1990 (less than four months).   Further, Dr. Rotter provided no objective findings to support a finding of disabled (Exhibit 2F).  For the aforementioned reasons, little weight is given to this opinion (SSR 96-2p).

After considering the evidence of record, the undersigned finds that the claimant's medically determinable back impairment could have been reasonably expected to produce

17

the alleged symptoms but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not documented by the sparse objective evidence.

Further, an MRI of the claimant's lumbar spine on December 8, 2006 (10 years after the date last insured), shows only mild disc bulging at the L4-5 and L5-S1 levels; minimal disc bulging at the L5-S1 level with a small annular fissure; degenerative changes with mild disc space narrowing at the T11-12 level; and small left renal cysts (Exhibit 10F-6 and 10F-7).

The record contains no objective medical evidence to support a severe impairment or the claimant's testimony of extreme symptoms/limitations from November 11, 1992, the alleged onset date, to June 30, 1996, the date last insured.  The record consists of only sparse evidence with diagnoses and no supporting rationale prior to the date last insured, as previously addressed in detail.

The claimant testified to no side-effects from medications with the exception of "upset stomach," which would not have precluded substantial gainful activity during the time at issue.

Based on a neurological evaluation on January 16, 2007, John H. Schmitt, III, M.D., opined the claimant was disabled based on his age, education, past relevant work, and chronic pain syndrome (Exhibit 5F).  This opinion was assessed more than 10 years after the date last insured, and Dr. Schmitt, who is not a specialist in the vocational field, considered vocational factors in reaching this conclusion.  For the aforementioned reasons, this opinion is not considered relevant.

The reviewing state agency physicians did not assess the claimant's physical residual functional capacity due to lack of evidence (Exhibit 8F).

The claimant was not under a disability as defined in the Social Security Act, at any time from November 11, 1992, the alleged onset date, through June 30, 1996, the date last insured (20 CFR 404.1520(c)).

(Tr. at 14-16.)

    Therefore, contrary to Claimant's assertion, the ALJ did

address the Claimant's diagnoses.  The ALJ considered Claimant's lumbar sprain, lesion on groin, pneumonia, and bronchitis.  He found that Claimant had also been off work in 1989 and 1990 for gastrointestinal problems.  The ALJ concluded that objective findings were not shown by the physician, and the aforementioned diagnoses were prior to the claimant's alleged onset date. Further, the aforementioned conditions are not alleged by the claimant with the exception of back problems.  Therefore, it was not necessary for the ALJ to then "address what limitations would be found if a person was off of work for a similar amount of time in one year."  SSR 96-2p "explains terms used in the Social Security Administration regulations on evaluating medical opinions concerning when treating source medical opinions are entitled to controlling weight, and clarifies how the policy is applied."  SSR 96-2p, 1996 WL 362211, at * 34490 (July 2, 1996).

    SSR 96-3p only applies if Claimant established that he had a medically determinable impairment between November 11, 1992 and June 30, 1996.  SSR 96-3p explains how the Commissioner is to consider allegations of pain and other symptoms in determining whether a medically determinable impairment is "severe".  To be found disabled, an individual must have a medically determinable "severe" physical or mental impairment or combination of impairments that meets the duration requirement.  Thus, if Claimant cannot establish a medically determinable impairment, SSR 96-3p is

19

not applicable.

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2) (2006). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(d)(2) (2006). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) (2000). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account

the factors listed in 20 C.F.R. § 404.1527 (2006).  These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors.  Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  Id. § 404.1527(d)(2).

Under § 404.1527(d)(1), more weight is given to an examiner than to a non-examiner.  Section 404.1527(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources).  Section 404.1527(d)(2)(I) states that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under § 404.1527(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion.  Sections 404.1527(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

The ALJ wrote a substantial decision wherein he fully

considered the evidence of record, including that of treating physician Dr. Rotter. (Tr. at 14-16.) Regarding Dr. Rotter's opinions, the ALJ found:

> On May 23, 1990, Norman J. Rotter, M.D., the claimant's then treating physician, completed a Group Disability Insurance form, in which he opined the claimant had been totally and continuously disabled since December 27, 1989, due to bone spurs. Dr. Rotter based his opinion on short-term treatment from December 27, 1989 to April 17, 1990 (less than four months). Further, Dr. Rotter provided no objective findings to support a finding of disabled (Exhibit 2F). For the aforementioned reasons, little weight is given to this opinion (SSR 96-2p).

(Tr. at 15.)

> Regarding Dr. Schmitt's opinions, the ALJ found:

> Based on a neurological evaluation on January 16, 2007, John H. Schmitt, III, M.D., opined the claimant was disabled based on his age, education, past relevant work, and chronic pain syndrome (Exhibit 5F). This opinion was assessed more than 10 years after the date last insured, and Dr. Schmitt, who is not a specialist in the vocational field, considered vocational factors in reaching this conclusion. For the aforementioned reasons, this opinion is not considered relevant.

(Tr. at 16.)

The undersigned has thoroughly reviewed all the records from Drs. Rotter and Schmitt and finds that the ALJ correctly concluded that their opinions were entitled to little weight. As stated earlier, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §

22

404.1527(d)(2) (2005).   Here, Dr. Rotter's suggested total disability due to "bone spurs" is not supported by the objective evidence of record and is based on short term treatment of less than four months. Dr. Schmitt's opinion was assessed more than ten years after the date last insured and he improperly considered vocational factors in reaching his conclusions.

20 C.F.R. § 404.1527(d)(2) requires the ALJ to "give good reasons" for not affording controlling weight to a treating physician's opinion in a disability determination.  The "treating source rule" requires the ALJ to give the opinion of a treating source "controlling weight" if he/she finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2).  If a treating source opinion is not afforded controlling weight because it does not meet these criteria, the ALJ must then determine what, if any, weight to give the opinion by examining several regulatory factors (e.g., length of the treatment relationship).  Id.

Here, the ALJ has provided "good reasons" for not giving controlling weight to Dr. Rotter's statement of total disability, i.e. his opinion is not supported by the objective evidence of record and is based on short term treatment of less than four months.  (Tr. at 15.) The ALJ also gave "good reasons" for finding

Dr. Schmitt's opinion not relevant, i.e. his opinion was given more than ten years after the date last insured and he improperly considered vocational factors.  (Tr. at 16.)

In the subject claim, the ALJ analyzed the medical evidence of record and concluded that Claimant did not meet the Social Security Act's definition because he failed to establish a medically determinable impairment between November 11, 1992 and June 30, 1996.  (Tr. at 11-16.)  To establish a medically determinable impairment, Claimant must show that he/she has "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques...not only by [Claimant's] statement of symptoms."  20 C.F.R. § 404.1508.  Therefore, "regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings."  SSR 96-4p, 1996 WL 374187 (1996).  Where there are no medical signs or laboratory findings to support the existence of a medically determinable impairment, the claimant must be found not disabled at step two of the sequential evaluation process.  Id.

Thus, the court respectfully **RECOMMENDED** that the presiding District Judge **FIND** that the ALJ did not err in finding that Claimant failed to establish a medically determinable impairment

between November 11, 1992 and June 30, 1996.  (Tr. at 16.)  The medical evidence of record showed Claimant's symptoms and complaints but failed to show objective medical signs and laboratory findings of anatomical or physiological abnormalities. The ALJ did not fail to recognize the severity of Claimant's impairments by not giving adequate weight to the opinions of treating and examining physicians regarding his condition as of his date last insured, June 30, 1996.  Rather, because Claimant did not have objective medical evidence of severe impairments, the ALJ was not obligated to proceed past the second step in the sequential analysis.  Further, it is Claimant's burden to produce evidence of disability prior to his date last insured.  In <u>Johnson v. Barnhart</u>, the Fourth Circuit held "[t]o qualify for DIB, [Claimant] must prove that [he] became disabled prior to the expiration of [his] insured status."  434 F.3d 650, 655-56 (4th Cir. 2005).

<u>Duty to Re-contact Treating Physician</u>

Claimant next argues that the ALJ was required to re-contact Dr. Rotter.  (Pl.'s Br. at 6.) This assertion is incorrect per 20 C.F.R. §404.1512(e), which states that the ALJ is only required to re-contact a treating physician when the medical evidence received from that physician is inadequate to make a disability determination.  Here, Dr. Rotter's opinion was found to be entitled to little weight because it relied on Claimant' subjective complaints of pain and was not supported by the objective evidence

25

of record, not because it was inadequate to make a disability determination.  (Tr. at 15.)

It is Claimant's responsibility to prove to the Commissioner that he or she is disabled. 20 C.F.R. § 416.912(a) (2006).  Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that he or she has an impairment.  <u>Id</u>. § 416.912(c).  In <u>Bowen v. Yuckert</u>, the Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings.  It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step.  The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . .  If the process ends at step two, the burden of proof never shifts to the Secretary.  . . .  It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

<u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).

Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel.  <u>Clark v. Shalala</u>, 28 F.3d 828, 830-31 (8th Cir. 1994).  Claimant bears the burden of establishing a prima facie entitlement to benefits.  <u>See</u> <u>Hall v. Harris</u>, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may

require.") Similarly, Claimant "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

It is respectfully **RECOMMENDED** that the District Court **FIND** the ALJ properly evaluated the claim and weighed the evidence of treating physician Dr. Rotter under 20 C.F.R. §§ 404.1512(e) and 404.1527(d)(2) and the applicable regulations. Substantial evidence supports the Commissioner's decision that Claimant was not disabled as defined in the Social Security Act, at any time from November 11, 1992, the alleged onset date, through June 30, 2006, the date last insured.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made,

27

and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F. 2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendations and to transmit a copy of the same to counsel of record.

May 31, 2011
    Date

                    Mary E. Stanley
                    Mary E. Stanley
                    United States Magistrate Judge