IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHARLES D. STRICKLAND,

           Plaintiff,

v.                                  CIVIL ACTION NO. 2:10-cv-00765

MICHAEL J. ASTRUE,
Commissioner of Social Security,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Charles D. Strickland's Complaint seeking review of the decision of the Commissioner of Social Security (Commissioner). [Docket 2.] By Standing Order entered August 1, 2006, and filed in this case on May 24, 2010, this action was referred to United States Magistrate Judge Mary E. Stanley for submission of proposed findings and a recommendation (PF & R) (Docket 4.) Magistrate Judge Stanley filed a PF & R on May 31, 2011, recommending that this Court affirm the final decision of the Commissioner and dismiss this matter from the Court's docket. (Docket 14.)

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file timely objections constitutes a waiver of de novo review and the Petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir.1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). In addition, this Court need not conduct

a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Objections to the PF & R in this case were due on June 17, 2011, and Plaintiff filed a document styled "Plaintiff's Objections to Proposed Report and Recommendations" on that day. (Docket 15.) The Commissioner did not file objections.

*I. Procedural Background*

The facts concerning this matter are more fully set forth in the PF & R. In short, on March 1, 2007, Plaintiff filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 (2006).[1] (Docket 10-5 at 80.) On April 15, 2007, following initial administrative denials of his claims, Administrative Law Judge, Harry C. Taylor, II (hereinafter "ALJ") conducted a hearing at which Plaintiff testified and presented evidence in support of his claim. (Docket 10-2 at 18-35.) At the hearing, the ALJ granted Plaintiff's request for more time to obtain additional evidence to support his claim. (Docket 10-2 at 21-22.) Despite this extension of time, Plaintiff failed to submit any additional medical records from the period of disability onset. (*Id*. at 13.)

On January 18, 2008, the ALJ concluded that Plaintiff was not entitled to disability benefits because "the sparse objective medical evidence [did] not establish an impairment or combination of impairments that significantly limited the claimant's ability to perform basic work-related activities for 12 consecutive months; therefore the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521)." (*Id*. at 13-14, 17.) Plaintiff's request for review

---

[1] An application summary prepared by a Social Security worker states that the application was completed on March 9, 2007. (Docket 10-5 at 2.)

2

of the ALJ's decision was denied by the Administration's Appeals Council and, thus, the ALJ's decision became the final decision of the Commissioner. (Docket 10-2 at 2-4.)

Having exhausted his administrative remedies, Plaintiff filed his Complaint in this Court on May 23, 2010. (Docket 2.) Following briefing by the parties, Magistrate Judge Stanley filed a PF & R on May 31, 2011, recommending that this Court affirm the final decision of the Commissioner. (Docket 14.)

*II. Objection to the PF & R*

Plaintiff's sole objection to the PF & R is: "The Decision failed to recognize the severity of Mr. Strickland's impairments by failing to accord adequate weight and credibility to the opinions of treating and examining physicians as to his condition as of his date last insured." (*Id.* at 1.) In support of this contention, Plaintiff references two specific sentences in the PF & R

1. the magistrate's conclusion that "Dr. Rotter's suggested total disability due to 'bone spurs' is not supported by the objective evidence of record and is based on short term treatment of less than four months." (Docket 14 at 23); and

2. the magistrate's conclusion that "the ALJ has provided 'good reasons' for not giving controlling weight to Dr. Rotter's statements of total disability." (*Id.*)

Plaintiff, citing 20 C.F.R. §§ 404.1527(d) & 416.927(d), argues that "the ALJ was required to give the opinion of a treating source controlling weight if he finds the opinion well-supported and not inconsistent with the other substantial evidence in the record" and that "[i]f the opinion is not accorded controlling weight, the ALJ must apply certain factors" as set forth in the regulations. (*Id.* at 2.) Plaintiff concludes that the

> ALJ's blank statement that the treating source's opinion is not supported by the objective evidence of record and is based on short term treatment of less than four months is insufficient to satisfy the requirements of 20 C.F.R. §§ 404.1527(d) & 416.927(d). The regulations require a more in-depth discussion of the factors

3

outlined. The ALJ erred in not complying with the regulations by giving his treating physicians adequate weight."

(*Id*. at 2.)[2]

### III. Standard of Review

Pursuant to Fed. R. Civ. P. 72(b)(3), the Court must determine de novo any part of a magistrate judge's disposition to which a proper objection has been made. This Court is authorized to review the Commissioner's denial of benefits, as set forth by his designee, the ALJ, under 42 U.S.C. §§ 405(g) and 1383(c)(3). Pursuant to these provisions, the sole issue before the Court is whether the final decision of the Commissioner denying Plaintiff's claims for benefits is supported by substantial evidence and was reached by application of the correct legal standard. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The findings of the Commissioner as to any fact shall be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). Evidence is substantial if "it consists of more than a mere scintilla of evidence but may be somewhat less than a

---

[2] The Court is troubled by Plaintiff's counsel's oft-repeated failure to direct her objections to the Magistrate Judge's findings and recommendations. While the heading of Plaintiff's filing states it is an objection to the "Proposed Report and Recommendations [sic]," Plaintiff's counsel assigns error not to the PF & R, but rather to the "Decision" of the ALJ. It is apparent that the objection was simply copied wholesale from Plaintiff's administrative review filing. (Docket at 135.) Such practice suggests a lack of comprehension by counsel of this Court's role in reviewing Plaintiff's Complaint. Further muddling things, the Plaintiff's objection faults the ALJ for failing to accord adequate weight and credibility to the "opinions" of treating and examining "physicians," yet here, Plaintiff's challenge is limited to the ALJ's rejection of just one physician's opinion.

Because, however, Plaintiff's filing states that the document represents "Plaintiff's Objections to Proposed Report and Recommendations [sic]," and because the Plaintiff has specifically referenced two sentences within the Magistrate's twenty-eight page PF & R, the Court will conduct de novo review of the record to resolve Plaintiff's objection.

preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig,* 76 F.3d at 589 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

*IV. Discussion*

Plaintiff's objection presents issues of both fact and law. His challenge to the finding that Dr. Rotter's opinion was not supported by the evidence is factual in nature. His claim that erred in complying with the regulations is a legal challenge. However, substantial evidence supports the ALJ's factual findings and that the ALJ applied the correct legal standards.

Plaintiff, who bore the burden of proving he was disabled and who was permitted additional time to secure relevant medical evidence, provided scant proof in support of his claim of disability. Contrary to Plaintiff's characterization, the ALJ did not provide a "blank statement" in making its determination to give Dr. Rotter's opinion little weight. (*Id*. at 2.) The record shows the ALJ provided a thorough recitation and analysis of the limited medical evidence of record, carefully reviewed and considered the Plaintiff's testimony, and applied the correct legal standards. (Docket 10-2 at 13-17.) In order to give a treating source's opinion "controlling weight," an ALJ must be able to find: 1) that the opinion is supported by clinical and laboratory diagnostic techniques; and 2) that it is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2).

The ALJ correctly determined that Dr. Rotter's opinion could not be given controlling weight where the record contained no objective medical evidence to support a finding of a severe medically determinable impairment expected to last for a continuous period of at least twelve months during the date of alleged onset to the date when Plaintiff was last insured. *See* 20 C.F.R. §

404.1520(a)(4)(ii). Dr. Rotter's entire opinion, which was given two years prior to the date of alleged onset of disability, is bare bones. (Docket 10-7 at 3.) It consists of a one page Group Disability Form in which he handwrote "Bone Spurs" as the complete description of Plaintiff's injury. While the form indicates Plaintiff was first seen by Dr. Rotter on December 27, 1989, and last seen by him in April 17, 1990, there is no evidence how often, if at all, the Plaintiff was seen by Dr. Rotter in between these two dates; rather, the one-page form indicates that treatment was "PRN," that is, as needed. *Id.* In response to the form's question: "On what date did the patient become totally and continuously disabled?" Dr. Rotter wrote "12/27/89." *Id*. Nowhere in this "opinion" did Dr. Rotter support his conclusion with any objective medical evidence or any other basis. *Id.* Dr. Rotter's opinion that Plaintiff was disabled is, of course, not a medical opinion;[3] but it is a conclusion that cannot be reasonably reconciled with other evidence in the record—such as the results of a lumbar spinal MRI scan (that was performed some ten years after Dr. Rotter saw Plaintiff and just a few months prior to Plaintiff's testimony before the ALJ) showing only "mild" disc bulging. (Docket 10-7 at 25.) Simply put, while the evidence in the record established that Plaintiff had a medical impairment, *i.e.* "bone spurs," Dr. Rotter's opinion of disability was not consistent with other substantial evidence in the record and offered nothing to aid the inquiry as to whether that the impairment significantly limited Plaintiff's ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 404.1521(a). For these reasons, the Court finds the ALJ's decision to give Dr. Rotter's little weight is supported by substantial evidence.

---

[3] The determination of disability is not a medical opinion, but rather a determination made by the Commissioner as to whether a claimant meets the statutory definition of disability. 20 C.F.R. § 416.927.

Plaintiff also challenges the ALJ's application of the correct legal standard through his contention that 20 C.F.R. §§ 404.1527(d) & 416.927(d) required the ALJ to provide a "more in depth" discussion of the factors outlined in these regulations. These two regulations are identical and provide:

> (d) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> > (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> >
> > (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide *a detailed, longitudinal picture of your medical impairment(s)* and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. *If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.*
> >
> > > (i) Length of the treatment relationship and the frequency of examination. *Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.*
> > >
> > > (ii) Nature and extent of the treatment relationship. *Generally, the more knowledge a treating source has about your impairment(s) the more weight*

*we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.* For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) Supportability. *The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion*. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) Consistency. Generally, *the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.*

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

(emphasis added.); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (tracking the factors set forth in 20 C.F.R. § 404.1527(d)(1)-(6)).

These regulations state that the Social Security Administration will "always give good reasons" for its determination of the weight given to a treating source's opinion. 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2). The purpose of this requirement is that it allows claimants to understand the disposition of their cases and "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-45 (6th Cir. 2004).

While these provisions set the forth the factors an ALJ considers in assigning weight to a treating source's opinion, they are silent as to the standard for the sufficiency of the ALJ's explanation for his decision. Social Security Ruling 96-2P, while lacking the force of law, offers helpful guidance on this question. SSR 96-2P, 1996 WL 374188 * 5 (July 2, 1996); *Pass v. Chater*, 65 F.3d 1200 n.3 (4th Cir. 1995)( "Social Security Rulings . . . do not have the force of law [but] they are entitled to deference unless they are clearly erroneous or inconsistent with the law.")(internal citation omitted). This Ruling requires an adjudicator to provide "specific reasons" for the weight assigned to a treating source's medical opinion. *Id.* The Ruling states that the reasons "be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* The Ruling also provides that a "case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion and the opinion may not be given "controlling weight" if the adjudicator finds that the opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Id.* at *2.

As the Magistrate Judge found, the ALJ expressly noted his "good reasons" for assigning little weight to Dr. Rotter's medical opinion. (Docket 14 at 23-24.) In his decision, the ALJ stated:

9

> On May 23, 1990, Norman J. Rotter, M.D., the claimant's then treating physician, completed a Group Disability Insurance form, in which he opined the claimant had been totally and continuously disabled since December 27, 1989, due to bone spurs. Dr. Rotter based his opinion on short-term treatment from December 27, 1989 to April 17, 1990 (less than four months). Further, Dr. Rotter provided no objective findings to support a finding of disabled (Exhibit 2F). For the aforementioned reasons, little weight is given to this opinion (SSR 96-2p).

(Docket 102 at 16.)

The ALJ's explanation for ascribing "little weight" to Dr. Rotter's opinion, while succinct, is legally sufficient, especially when considered in the context of the ALJ's entire decision. The ALJ's explanation explicitly states the degree of weight he gave to Dr. Rotter's opinion (*i.e.* "little") and there is no mystery on review that the ALJ's reason for his decision was that the length of Dr. Rotter's treatment of Plaintiff was quite brief (*i.e.,* "less than four months") and that Dr. Rotter's opinion contained "no objective findings" to support a finding of disability. These specific reasons correlate directly to several of the factors specified in those regulations, namely, the "Length of the treatment relationship and frequency of examinations" and "Nature and extent of the treatment relationship," [20 C.F.R. §§ 404.1527(d)(2)(i) &(ii) & 416.927(d)(2)(i)& (ii)] and the "Treatment relationship" and "Supportability" factors set forth in 20 C.F.R. §§ 404.1527(d)(2) & (3) and 416.927(d)(2) & (3). Nothing in Dr. Rotter's one-page form provides "a longitudinal picture" of Plaintiff's impairment. Nowhere in the opinion does he offer any analysis or even comment on the severity of Plaintiff's impairment. Nowhere in the opinion does he present "relevant evidence to support [his] opinion, particularly medical signs and laboratory findings." Finally, it is notable that in his decision the ALJ explicitly states that he considered opinion evidence in accordance, *inter alia*, with  20 C.F.R. §§ 404.1527 and Social Security Ruling 96-2P, a fact which leaves no doubt that he was mindful of the correct legal standards in reaching his decision. (Docket 10-2 at 16.) As such,

it is apparent that the ALJ applied the correct legal standard in making its decision and properly declined to give Dr. Rotter's opinion controlling weight when the record contained substantial evidence to the contrary.

The Court **FINDS** that the ALJ's findings are supported by substantial evidence and were reached by application of the correct legal standards.  Accordingly, the Court **OVERRULES** Plaintiff's objection, **ADOPTS** the PF&R (Docket 14), **DISMISSES** Plaintiff's Complaint [Docket 2], and **DISMISSES** this case from the docket. A separate Judgment Order will enter this day implementing the rulings contained herein.

  **IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

              ENTER: September 9, 2011

              THOMAS E. JOHNSTON
              UNITED STATES DISTRICT JUDGE